IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ACUMEN BRANDS, INC.                                                PLAINTIFF

v.                             No. 5:16-CV-05284

NHS, INC.                                                       DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant NHS, Inc.'s (NHS) motion (Doc. 6) to dismiss.[1] NHS has also filed a sworn declaration (Doc. 7) by one of its officers, Robert Denike, and a request (Doc. 8) that the Court take judicial notice of the documents and facts from a proceeding involving the parties at the United States Patent and Trademark Office (USPTO). NHS styled each of these documents as a "statement of facts" on the docket. Plaintiff Acumen Brands, Inc. (Acumen) filed a response (Doc. 17) to the motion to dismiss, and NHS filed a reply (Doc. 21) with leave of Court. For the reasons stated herein, the motion to dismiss will be granted.[2]

**I. Motion to Dismiss for Lack of Personal Jurisdiction**

This is a declaratory judgment action in which Acumen asks the Court to declare that specific NHS-owned trademarks are invalid and unenforceable against Acumen, and that Acumen has not infringed any of NHS's valid trademarks. Acumen is a citizen of Arkansas and Delaware because it is incorporated in Delaware and its principal place of business is in Fayetteville, Arkansas. NHS is a citizen of California because it is incorporated in California and its principal

---

[1] Although Local Rule 7.2(a) requires a party to file a brief in support separately from its motion, NHS incorporated its brief in support into the motion. Defense Counsel are reminded to abide by a court's local rules in future filings.

[2] Because the Court is dismissing this case for lack of personal jurisdiction, NHS's motion to strike, though it appears to lack merit under Rule 12(f), will be denied as moot rather than on its merits.

1

place of business is in Santa Cruz, California. NHS moves for dismissal under Federal Rule of Civil Procedure 12(b)(2), arguing that this Court, located in Arkansas, cannot exercise personal jurisdiction over NHS in this matter consistent with the requirements of due process. It has long been the law that "proceedings in a court of justice to determine the personal rights and obligations of parties over whom that court has no jurisdiction do not constitute due process of law." *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877) (overruled in part on other grounds by *Shaffer v. Heitner*, 433 U.S. 186 (1977)).

Whether the Court can exercise personal jurisdiction over NHS requires an analysis of two issues: (1) whether the exercise of personal jurisdiction over NHS is allowed under the forum state's long-arm statute; and (2) whether the exercise of personal jurisdiction over NHS comports with due process. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387–88 (8th Cir. 1991). "Arkansas's long-arm statute provides for jurisdiction over persons and claims to the maximum extent permitted by constitutional due process." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (citing Ark. Code Ann. § 16-4-101). The sole issue for analysis, then, is whether the Court can exercise personal jurisdiction over NHS consistent with due process. Acumen bears the burden of persuasion on this issue:

> When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists. To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant. A plaintiff's prima facie showing must be tested, not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion. Where no hearing is held on the motion, we must view the evidence in a light most favorable to the plaintiff and resolve factual conflicts in the plaintiff's favor; however, the party seeking to establish the court's personal jurisdiction carries the burden of proof and that burden does not shift to the party challenging jurisdiction.

*Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations and quotations

omitted).[3]

Whether a court can exercise personal jurisdiction over an out-of-state defendant has been the focus of a long line of Supreme Court cases. At the heart of these cases is the principle that a court may exercise personal jurisdiction over an out-of-state defendant consistently with the requirements of due process so long as the defendant has minimum contacts with the state such that maintaining the lawsuit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945). Where the defendant's contacts with the forum state are so systematic and continuous that the defendant can fairly be said to be "at home" in the state, then courts in that state may exercise personal jurisdiction over the defendant in any case or controversy. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). When the defendant's contacts are this substantial, a court is said to be exercising "general jurisdiction." *Id.* Where the defendant's contacts are too minimal for a court to exercise general jurisdiction, it may still exercise "specific jurisdiction" over those cases or controversies that arise out of or relate to the defendant's contacts with the forum (provided that exercising jurisdiction on the basis of those contacts does not offend traditional notions of fair play and substantial justice). *Daimler AG v. Bauman*, 571 U.S.--, 134 S.Ct. 746, 754 (2014). NHS argues that the Court cannot exercise either general jurisdiction or specific jurisdiction in this case.

### A.    General Jurisdiction

General jurisdiction may be exercised consistently with the demands of due process over a corporation whose "continuous corporate operations within a state [are] so substantial and of such

---

[3] Because the Court is not holding a hearing on this motion, the evidence is viewed and factual conflicts are resolved in Acumen's favor.

a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe*, 326 U.S. at 318. For a corporation's contacts with a forum state to reach this level, the corporation must essentially be "at home" in the state. *See Goodyear*, 564 U.S. at 928–29 (comparing general jurisdiction analyses in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) and *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), and focusing on the fact that the defendant in *Perkins* conducted its sole wartime business activity in Ohio). In all but the "exceptional case," a corporation will likely only be at home, and therefore subject to general jurisdiction, only in "its formal place of incorporation or principal place of business." *Bauman*, 134 S.Ct. at 762 n.19 (2014).

NHS is incorporated in and maintains its principal place of business in California. It may fairly be said to be "at home" in California, and courts in that forum may exercise personal jurisdiction over it in any matter. Acumen alleges that NHS is also at home in Arkansas because NHS sells items to Arkansas customers via the website www.nhsfunfactory.com. (Docs. 1, ¶ 15; 17, p. 15; 17-1). Acumen argues that these Internet sales, along with retail sales in Arkansas and the presence of distributors in Arkansas, establish sufficient systematic and continuous contacts for Arkansas to exercise general jurisdiction over NHS. (Doc. 17, pp. 11–16). Acumen is incorrect.

NHS's sales and advertising activities are not enough to subject it to general jurisdiction in Arkansas, nor is the purported presence in this state of third-party distributors. *See Goodyear*, 564 U.S. at 920 (holding that a "stream of commerce" connection created by the flow of a corporation's products to a forum typically is an inadequate basis for exercising general jurisdiction over the corporation); *see also Bauman*, 134 S.Ct. at 757–58 (referencing the traditional geographic limits of personal jurisdiction set out in *Pennoyer* and explaining that the Supreme Court has "declined

to stretch general jurisdiction beyond limits traditionally recognized."). The factors Acumen has identified cannot plausibly show that NHS is "at home" in Arkansas. Acumen fails to meet its burden in this respect, and so the Court cannot find that NHS is present in Arkansas in the traditional sense. This Court does not have general jurisdiction over NHS.

**B.     Specific Jurisdiction**

Specific jurisdiction may be exercised over a corporation when a case or controversy arises out of that corporation's contacts with the forum. *Int'l Shoe*, 326 U.S. at 319 ("[T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protections of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."). The Eighth Circuit has traditionally employed a five-factor test to determine whether alleged contacts a defendant has with a forum state are sufficient for an exercise of personal jurisdiction over the defendant to comport with due process. *Fastpath, Inc.*, 760 F.3d at 821. The Eighth Circuit analyzes "1) the nature and quality of contacts with the forum state; 2) the quantity of the contacts; 3) the relation of the cause of action to the contacts; 4) the interest of the forum state in providing a forum for its residents; and 5) convenience of the parties." *Id.* The first three factors are the most significant. *Id.* This test can be used by the Court to determine "whether the suit arises out of or is related to the Defendants' contacts with the forum and whether Defendants engaged in activities in the forum that reveal an intent to invoke or benefit from the protection of its laws." *Pangaea, Inc.*, 647 F.3d at 746. It is not mechanically applied. *Id.* at n.4.

Acumen again relies on NHS's Internet sales, advertising, and the presence of distributors,

and argues the Court should follow the Eighth Circuit's application of the *Zippo*[4] test to determine whether NHS's website gives rise to personal jurisdiction. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 711 (8th Cir. 2003) (describing the *Zippo* test as "an appropriate approach in cases of specific jurisdiction"). Acumen cites to a District of Minnesota order adopting a report and recommendation and denying a motion to change venue as an analogous case in which the *Zippo* test was applied to find personal jurisdiction existed over the defendant. *See 3M Co. v. Mohan*, Civil No. 09-1413, 2010 WL 786519 (D. Minn. March 5, 2010). Acumen's reliance on *Mohan* and the *Zippo* test are misplaced, as neither of those cases was a declaratory judgment action seeking a declaration of invalidity and noninfringement. This case *does* seek a declaratory judgment of trademark invalidity and noninfringement, and its atypical posture defines the scope of the specific jurisdiction analysis. "[T]he nature of the claim in a declaratory judgment action is to clear the air of infringement charges." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)[5] (quotation omitted). Following the Federal Circuit's reasoning in *Avocent*, this Court finds that the relevant inquiry into specific jurisdiction in this case is the extent to which the defendant has directed its enforcement activities at Arkansas and the extent to which the declaratory judgment action arises out of those enforcement activities. *Accord Mike's Train House, Inc.*, 2016 WL 6652712 at *4 (adopting an identical analysis in a declaratory judgment action for trademark noninfringement).

    Almost every NHS contact with Arkansas identified by Acumen relates to NHS's retail

---

[4] *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).
[5] While *Avocent* is a patent case, it is far more analogous to the instant case than cases where the trademark owner sues for alleged infringement. *Accord Mike's Train House, Inc. v. Metro. Transp. Auth.*, No. 16-CV-02031-JFM, 2016 WL 6652712, *4 (D. Md. Nov. 9, 2016), *on appeal* No. 16-2400 (4th Cir. Dec. 12, 2016) (also analogizing noninfringement declaratory judgment action in trademark case to *Avocent*).

distribution and sales. Acumen's declaratory judgment action appears to have nothing to do with NHS's retail distribution and sales in Arkansas. Instead, this dispute relates entirely to *Acumen's* retail distribution and sales of products branded with a mark that may or may not infringe on NHS's trademark. Whether NHS sells its products in Arkansas is practically immaterial to the question of whether Acumen is infringing on NHS's trademark. Under this analysis, NHS's enforcement activities are not sufficient minimum contacts with Arkansas to give rise to an exercise of specific jurisdiction over NHS in this action. The only two enforcement activities identified by Acumen are a September 24, 2016 email (Doc. 1, ¶ 41) from NHS's counsel disagreeing with Acumen's proposal to "live and let live" and a statement under oath (Doc. 1, ¶ 42) by NHS's CEO that he believed there was a likelihood of confusion between the parties' marks (which confusion would form the basis for a trademark infringement action). Construing these statements in Acumen's favor, the Court finds that they are plausibly perceived as threats to enforce NHS's trademark by bringing an infringement action against Acumen. However, NHS did not target these enforcement activities toward Arkansas. The statement by NHS's CEO was made in a collateral trademark cancellation action initiated by Acumen before the USPTO's Trademark Trial and Appeal Board (TTAB), and the email from NHS's counsel was a reply to an email sent by Acumen seeking mutual dismissal of the TTAB proceedings. In neither instance can NHS fairly be said to have reached into Arkansas to enforce its trademark. Instead, the identified enforcement activities in this forum were a direct result of Acumen's conduct.

The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S.Ct. 1115, 1122 (2014). A plaintiff's "unilateral performance in the forum state is insufficient to support the exercise of personal jurisdiction over" a defendant. *Mountaire Feeds, Inc. v. Agro*

*Impex, S. A.*, 677 F.2d 651, 655 (8th Cir. 1982). "'[T]he plaintiff cannot be the only link between the defendant and the forum.'" *Fastpath, Inc.*, 760 F.3d at 823 (quoting *Walden*, 134 S.Ct. at 1125). Acumen chose to initiate an action before the TTAB, and NHS's CEO made a sworn statement as a direct result. Acumen chose to send an email to NHS, and NHS's reply to Acumen was the natural consequence. These enforcement activities are directed at Acumen, but they are not directed at Arkansas. Finding specific jurisdiction over NHS on this basis would be akin to allowing Acumen's unilateral activity to draw NHS into this forum and would not comport with the demands of due process. This Court does not have specific jurisdiction in this declaratory judgment action over NHS.

## II.     Jurisdictional Discovery

In its response to NHS's motion to dismiss, Acumen requests jurisdictional discovery. (Doc. 17, p. 14). Acumen proposes discovery into "four straightforward issues: (i) the quantity and timing of NHS's sales in Arkansas; (ii) the existence and number of NHS distributors in Arkansas; (iii) the number and frequency of Arkansas consumers who have accessed and interacted with NHS's website, and NHS's interaction with such consumers; and (iv) the amount and timing of advertising NHS has directed to Arkansas." (*Id.*). Based on the allegations in the complaint and the law as set forth by the Court in this opinion and order, it is implausible that jurisdictional discovery would demonstrate that general jurisdiction can properly be exercised. Furthermore, none of these areas of discovery are likely to yield facts relevant to NHS's enforcement activity. As those are the NHS contacts that matter, the proposed discovery would not lead to factual allegations that would support a plausible case for the exercise of specific jurisdiction over NHS in this action. Jurisdictional discovery will be denied.

### III. Conclusion

IT IS THEREFORE ORDERED that Defendant NHS, Inc.'s motion to dismiss (Doc. 6) is GRANTED, and this case is DISMISSED WITHOUT PREJUDICE.

Judgment will be entered accordingly.

IT IS FURTHER ORDERED that Plaintiff Acumen Brands, Inc.'s motion for jurisdictional discovery, contained within its response (Doc. 17), is DENIED.

IT IS FURTHER ORDERED that Defendant NHS, Inc.'s motion to strike (Doc. 9) is DENIED AS MOOT.

IT IS SO ORDERED this 6th day of April, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE